(No. 19518.—

FRANK J. ALLEN, Plaintiff in Error, *vs.* MOSSER, WILLA-MAN & CO., INC., Defendant in Error.

*Opinion filed October 19, 1929.*

PACKARD, BARNES & MCCAUGHEY, (GEORGE PACKARD, of counsel,) for plaintiff in error.

DEMING, JARRETT & MULFINGER, and A. C. HECKLER, for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Frank J. Allen brought an action in assumpsit in the circuit court of Cook county against Mosser, Willaman & Co., Inc., a corporation, to recover $35,000 alleged to be due him under the terms of a written contract entered into by the parties during July, 1926. A general demurrer to the declaration was sustained by the trial court, and plaintiff electing to stand upon his declaration, judgment for costs was entered against him. From that judgment an

appeal was prosecuted to the Appellate Court for the First District, where the judgment of the trial court was affirmed. This court having granted a writ of *certiorari,* the cause is here for review.

The contract involved is as follows:

*"July 21, 1926.*
*"Mr. Frank J. Allen, 231 South LaSalle Street, Chicago:*

"DEAR SIR—In connection with the financing of the building and fee at 29 South LaSalle street, in the city of Chicago, commonly known as the National Life building: We are purchasing $3,500,000 land trust certificates, which will represent the beneficial interest in and to the land under the building herein above mentioned, and we hereby retain you to assist us and to use your best efforts in the syndication and sale of said certificates and also in giving your services in our behalf in the preparation of all proceedings in connection with the set-up and issuance of said certificates, granting you exclusive authority under our direction to proceed. For your services we do hereby promise to pay to you $35,000—said sum to be paid to you upon the completion of syndication and delivery of certificates or interims.

"You may indicate your acceptance of this proposal by writing your name in the lower left-hand corner hereof, and by doing so this letter will constitute and evidence a binding contract between us.

"Yours very truly,

E. S. W.—J.          MOSSER, WILLAMAN & Co., Inc.
          By Edson S. Willaman, *Vice-President.*

"Accepted: Frank J. Allen."

The declaration was filed April 30, 1927, and consists of six counts, in each of which the contract was set out *in hæc verba.* The first count of the declaration alleges the making of the contract, and avers that Allen then and there entered upon and undertook the performance thereof and rendered services thereunder under the direction of the defendant company and did and performed all things required of him; that as a result of his efforts and services he arranged for the syndication and sale of the certificates; that nevertheless the defendant company refused to proceed with the completion of the syndication or with the delivery of such certificates or interims and refused to pay plaintiff for his services the sum of $35,000, which is due

him under the contract, and that on and after January 3, 1927, he requested defendant to pay him said sum, but the latter refused and still refuses to pay the same. The second count is similar to the first, and further avers that plaintiff interested certain bankers, brokers, capitalists and other parties in the syndication and sale of said certificates, and obtained and placed defendant in touch with persons who were ready, able and willing to undertake and carry out the syndication and sale of the certificates; that nevertheless defendant refused to proceed with the syndication, and on January 3, 1927, notified plaintiff that the syndication had been dropped and defendant would proceed no further. The other counts are similar to the first count. The third, fourth and sixth counts further aver that the defendant company on January 3, 1927, notified plaintiff that the syndication and sale of the certificates had been called off, whereby plaintiff was prevented from performing and completing the contract. The fifth count further avers that defendant on January 3, 1927, without any reasonable cause or occasion therefor, informed and advised plaintiff that the syndication and sale of the certificates had been called off and would be dropped, whereby defendant prevented plaintiff from performing and completing his contract with defendant, to the damage of plaintiff in the sum of $35,000, being the amount due him under the written contract.

Counsel for plaintiff in error insist that the agreement between the parties does not create the relationship of principal and broker, principal and agent or master and servant, and hence the agreement is neither a brokerage contract nor general employment contract, either of which, it is admitted, is terminable at will. It is the contention of plaintiff in error that the agreement is one involving the skilled personal services of an independent contractor on a single, definite undertaking, to be paid for in a lump sum upon completion of the work; that the consummation thereof

was prevented by defendant in error refusing to proceed further with the undertaking, and that such a contract is not terminable at will. Defendant in error asserts that plaintiff in error was employed in the capacity of a broker or as an agent or servant.

The contentions of counsel for the respective parties are necessarily based upon their different interpretations of the agreement. As we view the terms of the written proposal submitted by defendant in error to Allen, the latter's personal services were sought to assist the company in the syndication and sale of a large amount of land trust certificates and also in the preparation of the necessary proceedings relative to the set-up and issuance of these proposed securities. The activities of Allen were to be under the direction of the company, and he was to be paid for his services the sum of $35,000, which is one per cent of the total amount of the securities proposed to be issued, after the syndication had been completed or finished and the certificates or interims representing the permanent issue of securities had been delivered to the respective parties or financial concerns comprising the syndicate. The company in its proposal to Allen stated that "we are purchasing" the securities. It did not state that the securities had been bought, but from the language of the entire communication we think the thought conveyed or intended was that negotiations were in progress for such purchase, and Allen's services were sought first to assist in the syndication and sale of the certificates proposed to be issued. It was not alleged in the declaration that defendant in error did buy the securities. Unless there was a syndication accomplished and a sale of the proposed securities made, no further services in the way of set-up and issuance thereof by Allen would be necessary. Neither could there be any delivery of the securities to the syndicate members unless such a syndicate was successfully formed. The period of time for which Allen was to put forth his best efforts in the syndication and sale of the proposed

securities is not stated and the amount of services to be rendered by him is not particularly set forth. There was no promise on the part of either of the parties that the negotiations, or the efforts of either of them, would extend over or continue for any certain period of time. The declaration states that defendant in error notified Allen on January 3, 1927, after the making of the contract in July, 1926, that the syndication had been dropped. Evidently, formation of the syndicate had been unsuccessful after both parties had put forth their efforts during the six months' period of time. We construe the agreement as an agency or brokerage contract and it did not create plaintiff in error an independent contractor. 2 Corpus Juris, p. 423; 14 R. C. L. p. 67; *Whitney & Starrette Co.* v. *O'Rourke*, 172 Ill. 177; Williston on Contracts, sec. 60; Mechem on Agency, secs. 592, 1540; *Coffin* v. *Landis*, 46 Pa. St. 426; *Pellett* v. *Manufacturers and Merchants Ins. Co.* 104 Fed. 502; *Caddigan* v. *Crabtree*, 179 Mass. 474.

Counsel for plaintiff in error say that the amount of money promised their client is not usually paid to the ordinary person or employee, and that the contract is therefore one of independent service. The large amount of compensation offered might indicate that the possible uncertainty of a successful syndication and sale of the proposed securities was in the minds of the parties when the proposal or agreement was made and accepted. It is unquestionably true that no such large payment of money as is here involved would be provided for in a contract for personal services where no time of employment is recited or amount of services is particularly specified, without the clear implication and understanding between the parties that the payment of such compensation was dependent upon the successful result of the undertaking involved. To our minds the relationship between the parties to this agreement is more similar to that of principal and broker or princi-

pal and agent, with payment dependent upon the successful conclusion of the undertaking, than to any other situation or relationship. It might be said that the contract expressed the idea of a sort of co-operative relationship, whereby the services and efforts of both parties thereto were required to be expended in obtaining the intended and desired result. However, an analysis of this entire agreement reasonably results in the conclusion that payment to Allen was not to be made unless the undertaking for which his alleged skill and experience were sought was carried to a successful conclusion. The syndication, sale and delivery of the securities were not completed.

The declaration filed contains no allegation of facts showing any capricious, fraudulent or arbitrary action on the part of the company whereby completion of the syndication or delivery of the certificates was prevented. No allegation of fact discloses that the syndicate could have been formed prior to January 3, 1927, or was reasonably capable of being accomplished in the future. Fraud or bad faith on the part of the defendant in error is neither intimated nor suggested. Under the provisions of the agreement here involved defendant in error was not required to continue the negotiations for the syndication and sale of the proposed securities until such time as plaintiff in error should determine, regardless of any conditions or circumstances which might occur and without exercising its conclusion and judgment concerning the project.

We think the declaration deficient in stating a cause of action, and the demurrer thereto was properly sustained. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*