Mozella Bell, Plaintiff-Appellant, v. Sheldon E. Pondell and Betty Jane Pondell, Defendants-Appellees.

Gen. No. 49,676.

First District, Third Division.

April 1, 1965.

404

Clarkston & Scott, of Chicago (Lucas T. Clarkston, of counsel), for appellant.

Louis L. Biro, of Chicago, for appellees.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This involves an appeal from a decree of the Superior Court of Cook County dismissing the complaint for want of equity after a hearing had before a master in chancery. The appeal was taken directly to the Supreme Court of Illinois and transferred here by that court.

The complaint asked for specific performance of a contract for the purchase of certain real estate located in Chicago, Illinois. The contract was on a printed form known as "Articles of Agreement for Warranty Deed," to which was attached a rider.

The questions presented to this court are (1) whether the contract was ambiguous to an extent which would justify the court in hearing parol evidence to determine its meaning, and (2) if the contract was ambiguous did the trial court correctly resolve such ambiguities in favor of the defendants.

On December 16, 1957, plaintiff, together with James Bell, who was at that time her husband, executed "Articles of Agreement for Warranty Deed," wherein plaintiff and her husband agreed to purchase from the defendants real estate described therein. In the

■■■■■■

contract, the purchasers agreed to pay the purchase price of $20,000 in the following language:

"in the manner following, to-wit:

SEE ATTACHED RIDER

with interest at the rate of —— (——%) per centum per annum payable ——— annually on the whole sum remaining from time to time unpaid."

The pertinent portion of the rider is as follows:

"RIDER

One-Thousand ($1,000.00) Dollars upon the signing of this agreement; One-Thousand ($1,000.00) Dollars on February 15, 1958; One-Thousand ($1,000.00) Dollars on April 1, 1958, provided the sellers deliver possession to the buyers on that date and if they do not so do, than (sic) the Two-Thousand ($2,000.00) Dollars is to be returned to the buyers. The sum of Seventeen Thousand, ($17,000.00) Dollars, is to be paid in twenty (20) years in equal monthly installments of $127.85 and the first payment is to be made on May 1, 1958, and the first of each month thereafter, monthly payments shall be made until the whole amount is paid in full. The purchasers may prepay any amount over One-hundred ($100.00) Dollars, at any time they desire. In addition, the purchasers are to pay to the sellers each month, one-twelvth (sic) $\frac{1}{12}$ , of the previous years taxes, and the sellers hereby warrant that they will use this money to pay the taxes on the said property. After the tax bills are issued, if the amount on deposit is not sufficient to pay the taxes, the purchasers shall within thirty (30) days pay

406

whatever is due. If the amount paid in, is more than necessary than (sic) the sellers shall immediately give the purchasers credit for the amount overpaid in addition buyers are to pay $2.00 a month to purchasers (sic) for insurance.

IT IS FURTHER AGREED that when the balance due is Ten Thousand ($10,000.00) Dollars, then if the purchasers wish then upon giving the sellers thirty (30) days notice the sellers will give them a deed and take back on (sic) purchase money mortgage for the amount still due and owing and on the same terms and conditions as in the preceding paragraph."

The evidence showed that pursuant to the rider three $1,000 payments had been made, and 55 payments of $127.85 each had also been paid by the plaintiff, making a total of $10,031. 75.

The plaintiff and her husband were divorced during the period that payments were being made, and pursuant to the terms of the divorce decree the plaintiff succeeded to all right, title and interest of her husband in and to the said real estate contract.

After the payment of $10,031.75 the plaintiff demanded of the defendants a warranty deed, under the provisions of the rider providing that when the balance due is $10,000 the purchaser, upon giving the sellers thirty days notice, is entitled to a deed and that the sellers would be required to take back a purchase money mortgage for the amount still due and owing. The defendants refused to give a deed, basing their refusal on the contention that the balance due was greater than $10,000, because the 55 monthly installments made by the plaintiff of $127.85 included interest, and after deducting that portion of the monthly payments which represented interest there was considerably more than $10,000 owing. The plaintiff

contends that there is no reference in the rider attached to the contract with regard to the payment of interest and there is no ambiguity in the contract. The defendants, on the other hand, contend that the contract is obviously ambiguous in that it recites the balance of $17,000 is to be paid in twenty years in equal monthly installments of $127.85, that the first payment is to be made on May 1, 1958, and that on the first of each month thereafter, monthly payments shall be made until the whole amount is paid in full. The contention of the defendants, of course, is that if payments of $127.85 were to be made monthly for a period of twenty years the amount paid would be in excess of $30,000 and not $17,000. They argue that the language, "to be paid in twenty (20) years in equal monthly installments" meant 240 monthly payments and that the reason the figure of $127.85 was inserted in the rider as the monthly installment was that it included interest.

The plaintiff filed a motion for summary judgment supported by affidavit, and the defendants filed affidavits in opposition to the motion. The case was referred to a master in chancery, first to hear the motion for summary judgment, and if that were denied, to take evidence and report his conclusions. The master, after hearing arguments, denied the motion for summary judgment and proceeded to take evidence. The evidence tended to show that at the time of the execution of the contract the plaintiff and the defendants were represented by counsel, and that plaintiff's attorney inserted the figure $127.85 in the rider. That the figure was taken from a real estate computation book showing the breakdown between principal and interest over various periods of time. The computation table was introduced in evidence and is known as a "Schedule of Direct Reduction Loan." A payment of $127.85 is shown on this table on a loan of

$17,000 with interest at the rate of 6.75%. However, the term in years and months shows 20 years and 6 months. There is no doubt from the testimony in this case that the computation table in evidence was used by the parties and their attorneys to determine the monthly payment to be made. It is also obvious that an error was made by the attorneys in using the table which called for such payments over a period of twenty years and six months. The monthly payment necessary to retire $17,000 over a period of twenty years at 6¾% per annum was $129.27. The monthly payment required to amortize a $17,000 loan over a period of twenty years at the rate of 6.6% per annum was $127.76, which is nine cents per month less than the amount provided in the contract. However, there was testimony to the effect that the monthly payment figure was discussed and that the plaintiffs had said that they could not pay more than $150 per month, and that by adding the cost of insurance and taxes to the $127.85 monthly payment it came to approximately $150.

■■ In Keefer Coal Co. v. United Elec. Coal Companies, 291 Ill App 477, 10 NE2d 210, the court held that where the court, on preliminary examination, has determined that a contract is ambiguous or incomplete, extrinsic evidence, including evidence of the acts and conduct of the parties tending to show their interpretation of the contract is admissible to ascertain its true intent and meaning. Where the facts are controverted, the meaning of the language of a written contract is a question of fact, and in cases where the court is unable to determine the meaning of the contract, and it is necessary to receive extrinsic evidence to determine what the contract is, the court, if such evidence is contrary, should submit the question of fact to a jury.

In Buttles v. Adkins, 318 Ill App 24, 28, 47 NE2d 516, the court said: "It has consistently been held that where any doubt exists as to the meaning of a contract, resort may be had to the circumstances surrounding its execution (Adams v. Gordon, 265 Ill 87; Gould v. Lewis, 267 Ill App 569)."

The language, "The sum of Seventeen Thousand ($17,000.00) Dollars is to be paid in twenty (20) years in equal monthly installments of $127.85," is clearly ambiguous. 240 monthly installments of $127.85 each, exceeds $30,000. The contract provides for equal monthly installments commencing on May 1, 1958, and the first of each month thereafter and that monthly payments shall be made until the whole amount is paid in full. It is, of course, possible under the contract to pay off the $17,000 in less than 20 years because the purchasers are given the right to prepay any amount over $100 at any time they desire. Assuming, therefore, that the monthly installment of $127.85 includes both principal and interest, and the purchasers made additional payments of amounts in excess of $100, the contract would then be paid in full in less than 20 years. That is the reason for the language "monthly payments shall be made until the whole amount is paid in full."

The plaintiff in support of her contention that the court cannot read into the contract a requirement to pay interest, cites the case of Lanum v. Harrington, 267 Ill 57, 107 NE 826. That case involved a bond for deed under seal to property, conditioned that if one of the parties should pay the promissory notes as they became due the giver of the bond would execute and deliver a deed to the premises. There was no ambiguity in the bond for deed, and appellant in that case contended that the time of payment of the principal and interest of the notes executed by them was extended. Oral evidence was permitted in that case to determine

whether the time of payment of principal and interest had been extended. The court there did not exclude oral testimony as to a subsequent agreement for a consideration to extend the time, but found that there was no consideration for a subsequent agreement to extend the time. That case did not involve an ambiguous contract, and is, therefore, of no assistance in determining the issues now before us.

Plaintiff also cites DeVares v. Corea, 202 Ill App 465. In that case plaintiff agreed to sell certain real estate for the sum of $2,100, payments to be made at the rate of $12 per month. Payments were to begin in July of 1910. The first payment was made on July 9, 1910, in the amount of $12. The court there held that since there was no written agreement to pay interest on the deferred payments of the purchase price such an agreement could not be read into the contract of sale. There was no ambiguity in the contract in that case, and it is not applicable to the case at bar.

Plaintiff also cites Summers v. Hadenberg, 198 Ill App 460. There, again, the contract for the sale of land was plain and unambiguous, and the court held that evidence as to negotiations leading up to the execution of the contract in an action to declare the contract forfeited were inadmissible. This case, likewise, has no application to the case before us, which involves a contract having a patent ambiguity.

The other cases cited by the plaintiff in her brief also relate to attempts to vary the terms of written contracts by parol evidence, which contracts were unambiguous on their face.

■■ The rule is well established that a contract complete and unambiguous on its face cannot be modified as changed by parol evidence. It is also a well settled rule of law that contracts which are ambiguous on their face and are subject to more than one inter-

pretation may be explained by extrinsic evidence in order to arrive at the intention of the parties.

■ ■ Since the contract before us is clearly ambiguous, we now come to the question of whether the trial court correctly resolved such ambiguities in favor of the defendants.

The evidence showed the following:

Interest was discussed prior to, contemporaneously with and subsequent to the execution of the "Articles of Agreement for Warranty Deed" ; the plaintiff and her husband were present with both defendants. Both the plaintiff and her husband were represented by an attorney as were the two defendants. The plaintiff's attorney inserted the figure of $127.85 in the rider.

The defendants had paid an income tax on a portion of the $127.85 monthly payments which were designated as interest. Copies of the tax returns of the defendants were offered in evidence and were admitted over the objections of the plaintiff. No point has been made in this court as to the rulings on those exhibits, nor have those rulings been argued in the brief of the plaintiff. Any error on these rulings is therefore waived under the rules of the Appellate Court.

The "Schedule of Direct Reduction Loan" was used by the attorneys for the parties at the time of the preparation and execution of the contract, and the figure of $127.85 was obtained from such schedule. This figure included interest.

The defendants testified that each of them had telephone conversations with the plaintiff regarding the obtaining of a mortgage from a loan company which would reduce the amount of interest she was paying. The defendants actually had obtained a commitment from First Federal Savings & Loan under which the interest payments would have been reduced to $6\frac{1}{4}\%$. The defendants said that in their telephone conversations with the plaintiff, the plaintiff said she

412

would be delighted if they could obtain a mortgage for her, because it would lower her payments and her rate of interest.

Mr. Pondell, one of the defendants, stated that he told the plaintiff that he had received a mortgage commitment for $14,400, and that the balance on the contract at that time was $15,300. (This represented principal.) The conversation allegedly took place on July 22, 1961. The plaintiff told Mr. Pondell at that time that she and her husband would try to raise the money to take care of the difference between the amount of the commitment and the balance owing. He also testified that he told her this mortgage would effect a savings of interest of $\frac{1}{2}\%$, and that the interest would be $6\frac{1}{4}\%$. Subsequently, in September and October of 1962 Mr. Pondell called the plaintiff. Plaintiff was then late in her monthly payments and she told Mr. Pondell that she would do the best she could. She later told Mr. Pondell that she and her husband were separated and that she would see that the payments were made.

The plaintiff denied having had the telephone conversations with either of the defendants regarding the reduction of interest payments which could be effected by the obtaining of a mortgage.

We have examined the record in this case and are satisfied that the trial court correctly resolved the ambiguities in favor of the defendants. While the monthly payment of $127.85 shown in the computation table includes interest at the rate of $6\frac{3}{4}\%$ on the principal of $17,000 over a period of 20 years and 6 months, there is no question that it was the intention of the parties to the contract that interest was to be paid on the remaining balance owing each month, and was to be included in the $127.85 provided for in the contract. The term of the contract is 20 years and that cannot be changed. The Articles of Agreement

413

must control in determining the exact amount of interest included with each monthly payment. This can be determined exactly having the known factors of $17,000 payable in monthly installments over a period of 20 years and with the monthly payment of $127.85.

In November 1962, when the last payment was made by the plaintiff, the principal due and owing under the Articles of Agreement for Warranty Deed was in excess of $10,000, and the plaintiff was not entitled to a deed to the premises.

There is ample evidence in this case to support the findings and decree of the trial court.

Decree affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.