James E. Hill *et al.*, Plaintiffs-Appellees, *v.* Kurt E. Meister *et al.*, Defendants-Appellants.

(No. 55336;

First District—July 8, 1971.

*Rehearing denied September 9, 1971.*

Harry G. Fins, of Chicago, for appellants.

Schuyler, Stough & Morris, of Chicago, (Richard A. Cowen, of counsel,) for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendants appeal from a decree which ordered them to remove encroachments from the plaintiffs' property.

The plaintiffs, James and Arlene Hill, and the defendants, Kurt and

Lillian Meister, are owners of adjoining residential lots in the Village of Prospect Heights. The lots front on the east side of Wildwood Drive, a north to south street, and are irregularly shaped. The southerly lot, owned by the Hills, is a corner lot bordered on the south by Stonegate Drive. It measures 242.91 feet on the south, 129.3⅝ feet on the west along Wildwood, 227 feet on the north and 80.08 feet on the east. The northerly lot, owned by the Meisters, measures 227 feet on the south (the common boundary with the Hills), 161 feet on the west along Wildwood, 219.25 feet on the north and 52.75 feet on the east.

In 1968, the Meisters built a frame shed and a brick garden wall, thirty feet in length, along the southerly edge of their lot. In May 1969, the Hills noticed that these structures encroached on their property and they called this to the attention of the Meisters. Both parties referred to their surveys. Hills' (made in 1964) indicated that the structures were over the property line; Meisters' (made in 1966) indicated that they were not. The Meisters suggested that the Hills sell or lease the footage necessary to remove the alleged trespass. The Hills refused but offered to help move the offending structures. The Meisters declined the offer and the parties ordered their properties re-surveyed. After receiving their new survey the Hills renewed their demands that the structures be removed and the Meisters told them to go to court.

Thereafter, the Meisters constructed a wooden fence farther to the south and the Hills filed this action for a mandatory injunction to compel the removal of the shed, wall and fence.

In their pleadings and at the hearing, the Meisters denied that there were encroachments. The trial court found that there were and ordered them removed. On appeal, the Meisters contend that: the judgment should be reversed because they did not receive a fair trial; the court erred in matters of evidence, and the issuance of a mandatory injunction was improper in that the encroachments, if any, were not intentional.

At the hearing the Hills presented the testimony of the surveyor who made the 1969 survey. He testified that he had surveyed the same lot in 1961 in connection with a sale to a prior owner. The procedure for ascertaining the correct location of a lot, he testified, was to check for the iron stakes or rods and also to check the original plat of the subdivision. In 1961 he had located the four corner stakes and a fifth iron stake midway along the southerly line of the property. He had re-surveyed the lot in 1964 to spot the house—which had been constructed on the lot after 1961—and at that time he again found all the stakes. In July 1969, when he surveyed the property to locate possible encroachments, the stake at the northwest corner of the Hills' lot was gone. However, from his 1961 field notes and the location of the stakes in 1961 and 1964, he was able

to restake the property to match the prior surveys. He did not recheck the subdivision plat because he had done so previously. He located the frame shed and brick wall with relation to the Hills' lot, and found they were over Hills' property line. The survey of 1969, prepared by him and introduced in the Hills' behalf without objection, showed that the Meister structures encroached on Hills' property.

Two surveyors testified for the Meisters that their 1969 surveys were correct and showed no encroachments. One of the surveyors said he found some of the iron stakes but they were not in the right place so he put in new ones at the east and west ends of the disputed property line. This surveyor had assisted in surveying the subdivision in 1956 and had worked on the original plat of both lots when these were laid out. He admitted there were errors in his 1969 survey. Three mistakes were developed: the distance from the southeast corner of the Meister house to their south lot line was two feet, seven and one-half inches shorter than shown in his survey; the distance from the southwest corner of the house to the south property line was three feet, four and one-quarter inches shorter than shown in his survey, and the measurement of the common property line between the Hills and Meisters was 227 feet rather than 230 feet, 8 inches, indicated on his survey. At the end of the trial the judge commented that he did not give the testimony of this witness serious consideration because of its errors.

The second Meister surveyor testified that he surveyed the lots of both parties and all the rest of the lots in the block. He stated that it was impossible to make an accurate survey of a single lot without checking all lots and corners relating to it. He said he found iron stakes but they appeared to be new and were not at the true corners of Hills' lot. He further testified that the angle for the northeast corner of the Hills' lot shown in the recorded plat was 108 degrees and 24 minutes while his own survey showed only 105 degrees and 28 minutes. He acknowledged that if the recorded angle were correct the northerly line of Hills' lot would angle farther to the north and, in that event, the shed, wall and fence would encroach upon their property. He justified his measurements by saying the recorded plat was in error.

A third survey had been prepared for the Meisters and was offered in evidence. The surveyor was not in court and the survey was not admitted.

As evidence of the court's prejudicial attitude and rulings, the defendants cite: the refusal to admit into evidence the third survey on the ground that the surveyor was absent from the courtroom, while admitting, under the same circumstances, the survey prepared by Hills' surveyor; not holding the Hills bound by a Meister survey which was admitted as a Hills' exhibit; accepting the testimony of Hills' surveyor but

disregarding that of Meister's second surveyor, whose survey was also admitted without objection; and denying a Meister motion, made during the trial and again at the conclusion of the testimony, for the appointment of an independent surveyor, to be selected by the court and paid for by the Meisters, whose testimony would be binding on both parties.

In referring to these purported errors, the defendants speak of the trial court's belligerency and disregard of evidence favorable to them. We have examined the full record and we find no indication that the court was either belligerent or prejudiced. Moreover, its rulings were not incorrect.

■■ No duty rests upon the court to rule out evidence to which there might be some objection; making appropriate objections is the function of the party opposing its admission. Either no objection or an inappropriate objection was made to the Hills' survey and the testimony concerning it. By not objecting to the lack of a proper foundation, this objection was waived. New or additional objections to the admission of evidence will not be considered for the first time on appeal. Finally, any question about the admissibility of the survey was cured when the surveyor appeared and testified that he made the survey. The Meisters' surveyor was not similarly produced and the attempt to authenticate his survey by a witness who said he ordered it, but who had no knowledge of its accuracy, was ineffectual.

■■ The survey made by the Meisters' witness whose testimony was discredited was not introduced into evidence by them. When the Meisters did not offer it in evidence the Hills did. Under the circumstances, there was no significant error in admitting the exhibit without binding the Hills to its inaccuracies.

■■ The contention that the court displayed prejudice by accepting the testimony of Hills' surveyor and not the testimony of the second Meister surveyor is untenable. The fact that the court believed the testimony of Hills' surveyor rather than Meisters' does not mean that he was prejudiced against the Meisters. A judge who hears the testimony of witnesses has the responsibility of determining their credibility and his findings of fact will not be disturbed unless they are against the manifest weight of the evidence. (*Finney v. White* (1945), 389 Ill. 374, 59 N.E.2d 859.) The Meister surveyor testified that the angle of the Hills' lot as shown on his survey was less than that shown on the recorded plat of the subdivision. The witness admitted, if the plat was correct, that the Meisters encroached on Hills' property. His survey and testimony attempted to impeach the plat. In the absence of authentic evidence that it was erroneous, the plat of the subdivision (which was in evidence) bound the parties as to the boundaries of their respective lots. *Nitterauer*

*v. Pully* (1948), 401 Ill. 494, 82 N.E.2d 643; *Brothers v. Johnstone* (1930), 340 Ill. 477, 172 N.E. 805.

■■■■ The contention that the court displayed prejudice in denying the Meisters' motion for the appointment of an independent surveyor whose findings would be binding upon the parties is without merit. Although the Hills did not object to the motion, the court was under no obligation to make the appointment. The court had listened to three surveyors and had considered several exhibits and could properly believe that another survey would add little to the testimony already heard. Within the limits fixed by statute, all matters relating to the conduct of a trial are in the court's discretion, including the number of expert witnesses on any subject. (*Geohegan v. Union El. R.R.* (1915) 266 Ill. 482, 107 N.E. 786.) Except when the trial court has abused its discretion, a court of review will not interfere with the manner in which it was exercised. The court did not abuse its discretion in denying the motion.

■■ Meister's final contention is that the encroachments were unintentional and that the court, instead of granting a mandatory injunction compelling the removal of the encroachments, should have limited the Hills to money damages for the value of the strip of land encroached upon. Cases are cited which hold that if an encroachment is unintentional and slight, the cost of removing it great and the corresponding benefit to the adjoining owner small, injunctive relief should be denied and the complaining party left to his remedy at law. The same cases hold that the mere showing that an encroachment exists does not establish that it was intentional. (*Malchow v. Tiarks* (1970), 122 Ill.App.2d 304, 258 N.E.2d 811; *Stroup v. Codo* (1965), 65 Ill.App.2d 396, 212 N.E.2d 518.) Although there was no proof that the Meisters intentionally placed either the shed or brick wall on Hills' property, the wooden fence was deliberately built there. We do not reach the issue, however, because the Meister's present contention was not raised in the trial court. In their pleadings and at the trial they denied any encroachment and the contention was not mentioned in their post-trial motion. Having taken this position in the trial court they cannot change their theory on appeal. *Blanchard v. Lewis* (1953), 414 Ill. 515, 122 N.E.2d 167; *Bowman v. Peterson* (1952), 410 Ill. 519, 102 N.E.2d 787.

The judgment is affirmed.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.